**Harvey G. FINN and Janet L. Finn, Plaintiffs-Appellants,**

v.

**David R. NEWSAM and Opal A. Newsam, Defendants-Respondents.**

**No. WD 37053.**

Missouri Court of Appeals, Western District.

March 18, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1986.

Application to Transfer Denied June 17, 1986.

Julian J. Ossman, Jefferson City, for plaintiffs-appellants.

Duane E. Schreimann, Jefferson City, for defendants-respondents.

Before BERREY, P.J., and TURNAGE and MANFORD, JJ.

BERREY, Presiding Judge.

Plaintiffs below, appellants herein, filed a three-count petition against defendants/respondents alleging negligence in the death of their son, Clifton Ray Finn. Plaintiffs also claim damages for psychic trauma resulting in a subsequent miscarriage by Mrs. Finn and for loss of society, companionship, consortium and services of Mrs. Finn as a result of the injuries ascribed in Count II. The trial court granted a summary judgment for defendants and this appeal follows.

The facts are both tragic and brief. Clifton Ray Finn was a seven year old boy. His family resided in a mobile home park which abutted the real estate in question. On January 27, 1983, the defendants were the owners of said real estate. Located on the property was a man-made pond, full of water. Sometime during the early evening of January 27, 1983, Clifton Ray went to the pond. The pond was ice covered and Clifton began to walk across it, the ice gave way, Clifton fell into the pond and drowned.

It is not necessary to trace all of the happenings and motions filed herein. Suffice it to say defendants filed a motion for summary judgment with suggestions and an affidavit in support of the motion. The plaintiffs failed to file a verified denial of

the facts set forth in the defendants' affidavit in support of the motion. Thus, those facts are deemed admitted. Rule 74.04(e); *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978); *Burki v. Wiggs*, 550 S.W.2d 933, 935 (Mo.App.1977). The trial court granted the motion and plaintiffs now appeal.

The appellants allege the trial court erred in granting the summary judgment because issues of fact did exist. When reviewing a summary judgment the court must review it most favorably to the party against whom it was rendered, in this case the Finns. *Black Leaf Products Co. v. Chemsico, Inc.*, 678 S.W.2d 827, 829 (Mo. App.1984).

The property comprises about twenty acres of unimproved land. The respondents do not live on the land. The pond is less than one acre and the respondents allege they had it drained in 1973. They were not aware that it had refilled. No permission was given to anyone including the deceased to trespass upon the property. The appellants lived in the trailer park adjacent to the property and the pond is some 90 to 120 feet from the south edge of the property which abuts the trailer park. Neither respondent knew of any children trespassing on their vacant land.

In reviewing the Restatement of Torts § 339, we are bound to consider it in its entirety, not selectively.

*Crawford v. Pacific Western Mobile Estates, Inc.*, 548 S.W.2d 216, 221 (Mo.App. 1977), is cited by appellants as reason to defeat the summary judgment. This reliance is misplaced. In *Crawford*, the court reversed with instructions to reinstate the verdict, noting that "[the] defendant had safe conditions if they themselves had not eliminated the safety feature of the fence by piling the concrete blocks against it." *Crawford, supra*, at 223. Such affirmative acts by their workmen created the steps that the child used in getting over the fence and subsequently falling into the settlement tank and drowning. Writing for the court in *Crawford, supra*, at 221–22, Judge Wasserstrom distinguished that situation from the instant matter as follows:

> The underlying concept mentioned has been expressly stated in Comment j under § 339 as follows:
>
>> There are many dangers, such a [sic] those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditiions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.

The Restatement then goes on in Illustrations No. 6 and 7 to show that the landowner will not be liable for the drowning of a trespassing child in a small artificial pond on his land, but that he does become liable for the death of a young child from an adjoining nursery if the artificial pond contains gold fish which can attract and distract the child. This distinction, based on whether the dangerous situation is or is not coupled with special distracting factors, has been expressly recognized in *Arbogast v. Terminal Railroad Assn. of St. Louis, supra* [452 S.W.2d 81 (1970) ], and *Salanski v. Enright, supra* [452 S.W.2d 143 (1970) ]. *Glastris v. Union Electric Co., supra* [542 S.W.2d 65 (1976) ], also emphasizes that in evaluating whether or not the distracting factors are sufficient to prevent the trespassing child from realizing the risk, attention must be paid to his lack of judgment due to immaturity.

In the instant case there was no implied invitation and no distracting influence.

The court in *Henderson v. Terminal Railroad Association of St. Louis*, 659

S.W.2d 227, 231 (Mo.App.1983), quoted Prosser, Law on Torts, 4th Edition, Ch. 10, § 59, pp. 371–372:

> One very important factor is that of whether any trespassing child may reasonably be expected to comprehend the situation. Sometimes this is expressed by saying that the danger must be latent, meaning apparently nothing more than that the child can be expected not to understand and appreciate the peril, or protect himself against it. The question here is not whether he does in fact understand, although that too has its importance; it is rather what the possessor may reasonably expect of him. Here the courts have displayed a tendency to set up certain more or less arbitrary categories of conditions which trespassing children, as matter of law, can be expected to understand. *This means that the possessor is free to rely upon the assumption that any child of sufficient age to be allowed at large by his parents, and so to be at all likely to trespass, will appreciate the danger and avoid it, or at least make his own intelligent and responsible choice. The danger to which such a fixed rule most often has been applied is that of drowning in water;* but there are numerous cases showing a similar rigidity as to the perils of fire, falling from a height or into an excavation, moving vehicles, ordinary visible machinery in motion, sliding or caving soil, and piles of lumber, crossties, and other building material. *See also:* 65 C.J.S. Negligence § 63(99) pp. 848–849.

Applying this rationale to the present case, we conclude that the appellants failed to make a submissible case of negligence under § 339 as a matter of law. (Emphasis added).

Finally, we look to *Baker v. Praver and Sons, Inc.*, 361 S.W.2d 667 (Mo.1962). The Supreme Court upheld the trial court's decision to sustain defendant's motion for a directed verdict at the close of the plaintiff's evidence on a claim for the drowning death of a five year old boy. The developers began bulldozing an area adjacent to the plaintiff's lot. Debris accumulated from this work and operated to dam a small creek which formed a small pond. This pond was located 225 feet from plaintiff's lot. The *Praver* facts show, among other things, that (1) there was evidence of a dirt path leading to the excavation area that had become a playground for children; (2) employees of the defendant had observed children playing in the area being cleared; (3) defendant's workmen told the children playing there to leave; and, that (4) no fences were present. Yet, under these *circumstances* (more compelling than those in the instant case), the Supreme Court failed to extend liability under the then attractive nuisance doctrine. The Supreme Court stated that this jurisdiction is committed to the view that the attractive nuisance doctrine is not applicable to "ponds, water-filled quarries, and pools of water in creeks and natural water courses." *Id.* at 670.

While we no longer operate under the attractive nuisance doctrine, *Anderson v. Cahill*, 485 S.W.2d 76 (Mo.1972) the preceding discussion regarding *Crawford* should put to rest any doubts regarding liability in the absence of a distracting influence. *Crawford* clearly demonstrates that Missouri adheres to the statement that "the pool and pond cases still state the law and a landowner is not now ... required to "child proof" his premises against an obvious danger." *Crawford, supra*, at 221.

■ The parents acknowledge they repeatedly warned their son to stay away from defendants' acreage and pond. They also warned the deceased about the dangers of walking on ice-covered ponds. The child was at large upon the premises of the respondents. The pond constituted open and obvious danger. A danger that a child old enough to roam the fields should have comprehended. *Crawford, supra*, at 221.

■ Appellants erroneously suggests that their right to a trial by jury, Article I,

Section 22 of the Missouri Constitution, was denied by the grant of the summary judgment motion. A party's right to a jury trial exists only if the pleadings so warrant and there exists disputed factual issues. *See Auffenberg v. Hafley,* 457 S.W.2d 929, 934 (Mo.App.1970) (the court found the sustaining of a motion for directed verdict did not deny one's right to trial by jury).

■ The trial court's granting of summary judgment on appellants' claim of negligent infliction of emotional distress based on the drowning death of Clifton is also affirmed. The Supreme Court in *Bass v. Nooney Company,* 646 S.W.2d 765, 772–73 (Mo. banc 1983), abandoned the classic impact rule which was necessary to recover under a theory of emotional distress. The court stated this tort action required a showing that (1) "defendant should have realized that his conduct involved an unreasonable risk of causing the distress;" and that (2) "the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.* at 772–73. Defendants' ownership of land which embraced a pond could not be conduct involving an unreasonable risk likely to cause the alleged emotional distress and resulting injuries. Thus, plaintiffs could not, as a matter of law, recover under a theory of emotional distress.

Judgment affirmed.

All concur.