Kenneth K. CARENDER and Rose S. Carender, his wife, Respondents,

v.

Robert N. BARRY, Appellant.

No. WD 32130.

Missouri Court of Appeals, Western District.

Oct. 6, 1981.

James F. Crews, Tipton, for appellant.

David A. Yarger, Versailles, for respondents.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

SHANGLER, Judge.

The plaintiffs Carender brought suit against defendant Barry in ejectment and for damages. The defendant by affirmative answer asserted right by adverse possession. The plaintiffs had judgment for possession of the land and for damages, and the defendant appeals.

The plaintiffs held ten acres in Moniteau County under conveyances by warranty deeds. A county road bounded the Carender tracts to the east and separated them from the Barry property. At the time the Carenders took title, Barry was already in occupancy of the southeastern tip of the Carender tract by an office building placed on skids, and by use as a vehicle park, among others. Barry gave testimony of adverse use and possession of the disputed land for prolonged years. The court rejected the contention of legal right by adverse possession, and that issue is not on appeal.

At the trial, the Carenders proved right to ejectment by proof of record title to the tract. The plaintiffs tendered also the testimony of registered land surveyor Miller to prove that the land Barry occupied was within the bounds of the Carender paper title. The surveyor used the legal description of the warranty deed to plat the survey. To qualify the plat as evidence, the surveyor described the method of measurement: He began from a limestone with a crosscut set securely in the ground described in the courthouse records as the marker for the west quarter quarter corner of the section. From that point the surveyor ran a line to another limestone marker, also recorded in the courthouse and described as the center of the section, and thus found the true south boundary of the tract. The existent fence on the south boundary of the Carender tract was in place within inches of the true alignment for the three hundred feet of extension along that boundary. The center stone—to which the line was extended from the quarter quarter corner point of beginning—was shown by the courthouse records as established by a year 1916 survey. The surveyor stated that stone monuments with cross-cuts [such as the one used for the base point of survey] were normally used to mark full section corners and quarter quarter corners, and the stone he used was typical. The witness acknowledged on cross-examination that he had no personal knowledge that the stone used to begin the survey was an original corner set by the government land surveyors.

The defendant Barry contends that the surveyor could not testify to knowledge that the quarter quarter section stone was the original government marker, therefore the survey did not commence from a definite point and the plat, drawn to the survey, was not competent evidence. The defendant argues cognately that absent the evidence of survey, the Carenders could not prove the boundaries of the land Barry occupied, and so failed to sustain a prima facie case of ejectment.

It may be, as contention goes, that a survey not commenced from an established government corner [or, if from a lost corner, not reestablished by the method of statute] lacks probative effect. *Carroz v. Kaminiski*, 467 S.W.2d 871, 872 (Mo. banc 1971). We doubt the contention but do not meet the merits because the evidence of survey was superfluous to the recovery for ejectment and damages as pleaded. We do observe only that the objection that the surveyor could not say was the actual stone set anciently by the original government survey is fanciful simply because personal knowledge cannot be expected. The law prescribes that "[a] surveyor need only *find* his beginning point when making a survey. And the corner can be located 'either from the plat and field notes of the original survey, *or by any competent extrinsic evidence.*' " *City of Marshfield v. Haggard*,

304 S.W.2d 672, 678 (Mo.App.1957). The established center section mark, the courthouse records, and the earlier official surveys [unimpeached and so a source of validation—*Clark v. McAtee*, 227 Mo. 152, 127 S.W. 37, 47 (Mo.1910)], among others, all tended to prove the official survey function of the quarter quarter stone used for that purpose.

The remedy to remove an occupant in wrongful possession of real property is by ejectment. An incident of such an action is the recovery of damages for injury to the property in the course of the disturbed possession. *More v. Perry*, 61 Mo. 174, 175 (1875). A prima facie case of ejectment is shown—in the absence of a contention of boundary—by the proof of title merely. *Gray v. Shelton*, 282 S.W. 53, 56[6–9] (Mo.1926). Only when the ejectment remedy is the means to quiet title to a boundary, must the plaintiff prove that the land sought to be repossessed is within the confirmation of the deed description. *Papin v. Allen*, 33 Mo. 260, 261 (1862); *Nichols v. Tallman*, 189 S.W. 1184, 1185[1–4] (Mo. 1916). The pleadings do not allege a boundary contention, nor does the evidence raise an issue. The defendant does not claim under a deed, but by adverse possession. Barry acknowledges the Carenders have record title and that they paid the taxes on the property. In effect, Barry concedes prima facie proof of ejectment under the Carender deed. He claims, only, that title to the enclosure he occupies on the Carender land vested to him by adverse possession. In an ejectment action where the defendant claims by adverse possession, the burden to prove the bounds of the enclosure the defendant claims adversely to the plaintiff falls on the defendant—not, as Barry would have it, on the Carenders. *Munger Securities Co. v. Martin*, 209 S.W. 875, 876[2, 3] (Mo.1919). The contention of adverse possession was ruled against the defendant and is not on appeal. No dispute of boundary inheres in the ejectment action, thus the evidence of survey remains irrelevant.

The judgment is affirmed.

All concur.